Lavada H. OLDFIELD

v.

Phillip H. ALSTON, Jr., D. W. Brosnan, William A. Fickling, William A. Fickling, Jr., Clifford L. Fitzgerald, Jr., Jerome C. Hunsaker, Jr., John J. McDonough, Ivor Massey, T. L. Roan, Bill C. Wainwright, Charter Medical Management Company, Charter Medical Corporation, F & W Investments, Inc., Fickling & Walker, Inc., Atlanta National Management Company and Atlanta National Real Estate Trust.

Civ. No. C77–592A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 2, 1978.

Malcolm H. Ringel, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., Pomerantz, Levy, Haudek & Block, New York City, for plaintiff.

James S. Stokes, IV, Daniel B. Hodgson, Robert W. Miller, Alston, Miller & Gaines, Atlanta, Ga., Mordecai Rosenfeld, New York City, for defendants.

## ORDER

O'KELLEY, District Judge.

### STATEMENT OF THE CASE

This civil action is brought by plaintiff, Lavada H. Oldfield, derivatively on behalf of defendant, Atlanta National Real Estate Trust [hereinafter "ANRET"] and representatively on behalf of all shareholders of ANRET. The other defendants include individual trustees of ANRET, ANRET's investment manager, Atlanta National Management Company [hereinafter "Management Co."], and various corporate defendants, including Charter Medical Corporation [hereinafter "Charter Medical"], Charter Medical Management Company [hereinafter "Charter Management"], Fickling & Walker, Inc. [hereinafter "Fickling & Walker"], and F & W Investments, Inc. [hereinafter "F & W"]. The plaintiff has stated two claims against these defendants. The first alleges that certain individual trustee-defendants, along with the various corporate defendants, have dominated and controlled the remaining trustees in the practices and policies of the trust, causing a diversion and waste of ANRET's assets in breach of their fiduciary duties to the trust. Second, plaintiff alleges that the defendants violated section 14(a) of the Securities and Exchange Act of 1934 by disseminating a false and misleading proxy statement to ANRET's shareholders in that the proxy statement failed to disclose the actions taken by the trustees in violation of their fiduciary duties. Thus, both claims are predicated on the same alleged misconduct, which consists of (1) causing ANRET to allow Charter Medical to prepay without penalty a loan from ANRET although the terms of the loan, which were favorable to ANRET, prohibited such prepayment, and (2) causing ANRET to amend the management contract with Management Co. so as to provide a guaranteed minimum compensation of $450,000 per year to Management Co. at a time when defendants knew that Management Co. would be entitled to no compensation under the previous compensation formula. Plaintiff is seeking a judgment compelling the defendants herein to pay to ANRET their profits and ANRET's losses, including exemplary damages. Subject matter jurisdiction is invoked under the Securities and Exchange Act of 1934, because of diversity of citizenship, and upon the princi-

ples of pendent jurisdiction. This action is presently before the court on (1) defendants' motion to stay further action on all pending motions until the court determines whether the plaintiff has stated a valid claim under section 14(a) of the Securities Exchange Act of 1934 and whether the court has subject matter jurisdiction over all other claims herein; (2) plaintiff's motion for leave to file an amended complaint pursuant to rule 15(a) of the Federal Rules of Civil Procedure; (3) on defendants' motion to dismiss for failure to comply with rule 23.1 of the Federal Rules of Civil Procedure and for failure to state a claim under section 14(a); (4) on the motion of defendant Fickling & Walker to dismiss the complaint against it; (5) on the motion of defendant Charter Management to dismiss the complaint against it; (6) on the motion of defendant ANRET to require the plaintiff to deposit security for expenses herein; and (7) on plaintiff's motion to examine ANRET's list of shareholders. Each of these motions will be considered *seriatim.*

## I.

■ Defendants' motion for an order staying further action on all pending motions herein until the court determines whether the plaintiff has stated a valid claim under section 14(a) of the Securities Exchange Act of 1934 and whether the court has subject matter jurisdiction over all other claims has not yet been submitted to the court by the clerk. However, by letter dated January 30, 1978, counsel for defendants has informed the court that should the court rule against defendants on the securities and jurisdictional issues in the case *sub judice,* such a stay is necessary in order to allow certain defendants to obtain separate counsel because of potential conflicts of interest between various defendants. In the court's view, however, the existence of potential conflicts of interest has been known, or should have been known, to the defendants and their counsel long ago. Moreover, although defendants are requesting a stay until all jurisdictional issues are resolved, defendants have not yet filed a motion to dismiss for lack of subject matter jurisdiction. Finally, the court notes that a draft of this order with respect to all pending motions has now been prepared and substantially ready for entry for two months. The court has delayed entering it only because of its generosity in granting defendants' repeated requests for extensions of time. In view of the amount of time and effort this court has given to a careful consideration of the merits of the pending motions herein, defendants' current request for a stay reflects a complete disregard for the burdens placed upon the judicial manpower by the heavy caseload in the Northern District of Georgia. Accordingly, because the court's ruling herein on the securities issue is not adverse to defendants, the court concludes that further delay with respect to the motions which have now been pending for many months is not in the best interests of justice and judicial economy. For the above reasons, defendants' motion for a stay is hereby denied.

## II.

If allowed, plaintiff's amended complaint would not alter the principal claims. Among others, the proposed changes therein include (1) clarifications in the jurisdictional allegations; (2) a correction in paragraph 9 to indicate that both Charter Medical and Charter Management are among those defendants who allegedly dominate ANRET's trustees and the practices and policies of ANRET; (3) additional statements alleging that the actions of ANRET's trustees in causing ANRET to permit Charter Medical to prepay the loan and in amending the management contract to provide a guaranteed minimum income to Management Co. were pursuant to a conspiracy with the other defendants and that the false and misleading proxy statement was also issued pursuant to this conspiracy; (4) additional statements alleging that all the defendants acted with knowledge that the transactions attacked in the complaint were wrongful or acted in reckless or grossly negligent disregard of the rights and interests of ANRET and its shareholders; (5) additional statements which further par-

ticularize the reasons why demand upon ANRET's trustees and shareholders would be futile.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires." The United States Supreme Court has construed this to mean that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment . . . the leave should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). After careful consideration of the history of this action and its complexity, the court finds that the record is free from evidence of bad faith or dilatory motives on the part of the plaintiff. Accordingly, because the proposed amendment clarifies the original complaint with more detailed allegations, the court concludes that justice requires that plaintiff be given leave to amend the complaint. Therefore, for the above reasons plaintiff's motion for leave to amend is hereby granted.

## III.

ANRET and all other defendants who have appeared in this action have joined in a motion to dismiss grounded upon two principal contentions: (1) that all of plaintiff's claims in this suit are barred because plaintiff has failed to comply with rule 23.1 of the Federal Rules of Civil Procedure in that the complaint does not set forth with particularity either the efforts made by the plaintiff to obtain the action she desires from the trustees and shareholders of AN-RET or sufficient reasons justifying her failure to make these efforts, and (2) that the plaintiff has failed to state a claim under section 14(a) of the Securities and Exchange Act because she has failed to establish either "transaction causation" or "loss causation." Each of these contentions will be considered separately by the court.

## A.

### COMPLIANCE WITH RULE 23.1

■ In a derivative action such as the case *sub judice,* one or more shareholders of an investment trust are purporting to enforce a right belonging to the trust itself, the trust having failed to enforce such a right. Accordingly, rule 23.1 of the Federal Rules of Civil Procedure provides that

the complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

Although, in interpreting rule 23.1, federal law defines the requirements for demand upon *directors* or *trustees,* this court must look to the applicable state law "to determine whether demand on *stockholders* is necessary." *See, e. g., Brody v. Chemical Bank,* 482 F.2d 1111, 1114 (2d Cir. 1973). Thus, in the case *sub judice* the court will deal with the questions of trustee demand and shareholder demand separately.

### 1. Trustee demand

■ With respect to trustee demand, the court notes that in paragraph 20 of the amended complaint plaintiff's allegations of the futility of a trustee demand are pleaded with "sufficient particularity":

20. Demand upon the trustees of the trust to bring this action would be futile and is excused. All the present trustees, with the possible partial exception of defendant Wainwright, were trustees at the time of the wrongful transactions complained of and participated therein by causing, directing, approving or ratifying such transactions with knowledge or notice of their illegality and their character injurious to the trust and its shareholders. The trustees cannot be expected to bring this action since they would have to bring it against themselves; nor could they be entrusted with the faithful and effective prosecution of the action.

*See Liboff v. Wolfson,* 437 F.2d 121 (5th Cir. 1971). However, defendants contend that where the majority of the trustees of a real estate investment trust are unaffiliated with the trust's management company, the demand required by rule 23.1 cannot be excused unless there are allegations of personal gain to the unaffiliated trustees. *See, e. g., In re Kauffman Mutual Fund Actions,* 479 F.2d 257 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Contrariwise, plaintiff submits that when a complaint alleges that all of the trustees conspired with the other defendants, either by active participation in the wrongdoing or by approval with full knowledge or notice that the challenged transactions were wrongful, *Kauffman* and its progeny are inapposite and a demand on the trustees clearly becomes futile. Furthermore, plaintiff argues that *Kauffman* is distinguishable from the case *sub judice* because the unaffiliated directors in *Kauffman* were not even named as defendants or charged with the acts complained of. In determining whether circumstances excusing demand exist in a particular case, by the weight of authority, "the normal procedure is to look solely to the allegations of the complaint." *See, e. g., DePinto v. Provident Security Life Insurance Co.,* 323 F.2d 826, 830 (9th Cir. 1963), *cert. denied,* 376 U.S. 950, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964). Accordingly, given plaintiff's allegations that all of the trustees either actively participated in the wrongful transactions or, at the least, approved or ratified such transactions with knowledge or notice of their illegality, the court concludes that demand upon the trustees to bring this action should be excused. In this regard, this court agrees with the concurrence of Judge Coffin in *Kauffman, supra* :

> I find it hard to imagine that a director, however, unaffiliated, who had participated, or under these circumstances knowingly acquiesced, in a major transaction, albeit for a corporate purpose, would authorize a suit, effectively against himself, claiming that the transaction violated the federal antitrust laws. Even independent watchdogs cannot be thought

ready to sign a confession of that magnitude.

*Kauffman, supra* at 269. This analysis comports with the conduct of the unaffiliated trustees in this action, which conclusively demonstrates their antagonism to it. ANRET's answer did not take a neutral position. Nor did ANRET merely oppose this action on the basis of a lack of demand on the trustees or its shareholders. Rather, ANRET has vigorously opposed this action *on the merits.* In this regard, there is also authority that a demand upon directors or trustees is unnecessary where the derivative entity contests the action on the merits. *See, e. g., Meltzer v. Atlantic Research Corp.,* 330 F.2d 946, 948 (4th Cir.), *cert. denied sub nom. Scurlock v. Meltzer,* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964).

### 2. Shareholder demand

#### a. Which state's choice of law rule should be applied?

■ With respect to the requirement of shareholder demand, the plaintiff and the defendants differ as to which state's choice of law rules should apply to determine if the shareholder demand is a condition precedent to the assertion of a derivative action. Because this action was brought in the United States District Court for the Southern District of New York and was transferred to this court on defendants' uncontested motion for a transfer pursuant to 28 U.S.C. § 1404(a), defendants contend that this court must look to the conflicts of laws rules of the transferor forum, New York, to determine which state's law to apply. *See Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Contrariwise, the plaintiff apparently contends that because she consented to defendants' section 1404(a) motion for transfer, the rule of *Van Dusen v. Barrack* should not be applied and this court should look to the conflicts of law rules of Georgia to establish which state's law to apply in determining the necessity of a shareholder demand. Plaintiff argues that *"Van Dusen*

protects plaintiff in his right to bring his action in the state in which the law is most advantageous to him" and that the *Van Dusen* Court specifically declined to extend its holding to cases where the plaintiff acquiesces in a section 1404(a) transfer:

> In so ruling, however, we do not and need not consider whether in all cases section 1404(a) would require the application of the law of the transferor, as opposed to the transferee, State. We do not attempt to determine whether, for example, the same considerations would govern if a *plaintiff sought transfer* under section 1404(a) . . . .

(Emphasis added.) *Van Dusen, supra,* 376 U.S. at 639–40, 84 S.Ct. at 821. In this court's view, the plaintiff's reading of *Van Dusen* overlooks the policy considerations underlying that opinion. *Van Dusen* is not predicated upon a policy that the plaintiff should always be able to dictate the law to be applied. Rather, *Van Dusen* was designed to prevent the use of section 1404(a) as a forum-shopping instrument:

> We believe, therefore, that both the history and purposes of section 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms. . . . We conclude, therefore, that in cases such as the present, *where the defendants seek transfer,* the transferee district court *must be obligated* to apply the state law that would have been applied if there had been no change of venue. A change of venue under section 1404(a) generally should be, with respect to state law, but a change of courtrooms.

(Emphasis added.) *Van Dusen, supra* at 636, 639, 84 S.Ct. at 819. The plaintiff in this action, having complete freedom (limited only by principles of territorial jurisdiction) to choose the forum in which to litigate her claims against the defendants, originally chose New York. Accordingly, she cannot now argue for a change in the law to be applied simply because she consented to defendants' motion for a section 1404(a) transfer to the Northern District of Georgia. If the court applied the choice of law rules of the transferee forum, Georgia, rather than those of the transferor forum, New York, at the plaintiff's insistence in the case *sub judice,* the *Van Dusen* policy to prevent use of section 1404(a) as a forum-shopping instrument would be defeated. Therefore, the court concludes that *Van Dusen* compels this court to look to New York's choice of law rules to determine which state's law to apply with regard to the necessity of the shareholder's demand.

### b. Which state's law should be applied?

The controlling New York conflicts of law case dealing with the question of whether demand on the trustees and the shareholders of a real estate investment trust is futile is *Greenspun v. Lindley,* 36 N.Y.2d 473, 369 N.Y.S.2d 123, 330 N.E.2d 79 (1975). In *Greenspun,* the New York Court of Appeals held that a provision in the applicable trust instrument governing a foreign real estate investment trust which stated that the law of Massachusetts was determinative of the rights of all parties constituted a prima facie showing that the law of Massachusetts should govern. The court in *Greenspun* indicated that it might apply New York law if the trust had such a significant association with New York to support a finding of presence therein.

Applying *Greenspun* to the case *sub judice,* it appears that section 6.4 of AN-RET's declaration of trust provides that the rights of all parties in conjunction with the administration of ANRET are to be subject to and construed according to the laws of the state of Maryland. In addition, the plaintiff has made no allegations concerning ANRET's "presence" in New York, and such allegations would be unavailing in the face of the affidavit of Mr. T. L. Roan, which states that ANRET transacts business, had its only office, keeps its records, and holds its trustees' meetings in Atlanta, Georgia. Therefore, for the above reasons, the court concludes that in the case *sub judice* it should apply Maryland law to de-

termine whether a shareholder's demand is a condition precedent to the assertion of a derivative action.

### c. *Was shareholder demand required under the applicable state law?*

██ Because Maryland has never adopted a specific statute governing derivative actions, the principal Maryland authority on derivative actions is found in the decision in *Parish v. Maryland & Virginia Milk Producers Association, Inc.,* 250 Md. 24, 242 A.2d 512 (1968). Under *Parish* it appears that a demand upon the shareholders is excused when the shareholders either cannot ratify or lack adequate authority to remedy the wrong or wrongs asserted by the individual stockholder. In this regard, sections 4.5 and 2.6 of ANRET's declaration of trust provide in pertinent part:

Section 4.5. Voting: Shareholders shall be entitled to vote for the election of the trustees, as provided in sections 2.5, 2.8 and 2.9 of Article II, *and on no other matters,* except for removal of trustees as provided in section 2.8 of Article II and to consent to amendments to the declaration or to termination of the trust as provided in section 6.1 of Article VI, or as may be required by law.

Section 2.16. Authority of Trustees: A trustee shall have absolutely exclusive control over the management and conduct of the business affairs of the trust, *free from any power or control on the part of the shareholders.*

(Emphasis added.) Thus, it appears that the only "remedy" conceivably available to

ANRET's shareholders is to remove or to refuse to reelect the incumbent trustees and to elect successors who would institute suit against the defendants. However, this is a possibility in all shareholder's derivative actions and, therefore, in this court's view, does not prevent demand from being futile under Maryland law. This conclusion is supported by the remarks of the *Parish* court in its discussion of the demand requirement:

In considering this entire question, it should be kept in mind that the trend in the more modern authorities is to be more tolerant of the derivative suits of minority members or stockholders. The size and complexity of corporate transactions makes necessary and important this form of "legal therapeutics."

*Parish, supra* 242 A.2d at 546. Thus, for the above reasons this court concludes that demand on the shareholders of ANRET to bring this action is not required under the applicable law. Accordingly, defendants' motion to dismiss grounded on plaintiff's alleged failure to comply with rule 23.1 of the Federal Rules of Civil Procedure is hereby denied.

### B.

## VALIDITY OF PLAINTIFF'S CLAIM UNDER SECTION 14(a)[1] OF THE SECURITIES EXCHANGE ACT OF 1934

Because this action was originally brought in the United States District Court for the Southern District of New York and

---

1. Section 14(a) of the Securities Exchange Act of 1934 is codified at 15 U.S.C. § 78n(a):

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect to any security . . . ..

The applicable regulation under section 14(a) in the case *sub judice* is rule14a–9 entitled "False or Misleading Statements":

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, *or which omits to state any material fact necessary in order to make the statements therein not false or misleading* or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9(a). (Emphasis added.)

was transferred to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a), it is unclear whether this court must look to the decisions of the United States Court of Appeals for the Second Circuit or to those of the United States Court of Appeals for the Fifth Circuit in determining the requirements of section 14(a).[2] Fortunately, however, there is no conflict between the Fifth Circuit and the Second Circuit in their interpretations of section 14(a) because there are very few, if any, Fifth Circuit cases giving content to the requirements of section 14(a). Contrariwise, the law of the Second Circuit in this area is very well developed. Accordingly, relying on a Second Circuit case, the defendants herein are moving to dismiss plaintiff's claim under section 14(a) on the ground that plaintiff cannot show "transaction causation." *See Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374 (2d Cir. 1974).

Essentially, defendants contend that because the proxy solicitation in the case *sub judice* sought authorization for the election of trustees and the selection of auditors, and not for ratification or approval of any of the alleged improper transactions, "transaction causation" is lacking. In support of this position, the defendants also cite several recent district court decisions. For example, in *Epic Enterprises, Inc. v. Brothers,* 395 F.Supp. 773 (N.D.Okl.1975), the plaintiff corporation alleged that the director defendants who were responsible for the preparation of proxy statements understated the total expense which management would incur in the proxy solicitation and failed to disclose that management had approved an illegal and unauthorized loan transaction with one of the defendants while he was a director. A section 14(a) violation was alleged to be contained in a proxy statement in which the directors of the plaintiff corporation solicited proxies of

shareholders for the purpose of being re-elected as directors and in connection with certain amendments to corporate bylaws and articles of incorporation. However, the court rejected this allegation and concluded that there was no causation shown between the proxy solicitation and the misconduct which allegedly caused plaintiff's damages:

> Assuming, arguendo, that the proxy solicitation did contain a material violation of section 14(a), it is apparent that the Plaintiff has failed to state a cause of action upon which relief can be granted, for the facts as pleaded do not show causation between the alleged false and misleading proxy statements and the alleged transactions causing the harm of which Plaintiff complains. The proxy solicitation was not a link in accomplishment of either the (1) alleged overexpenditures or (2) the alleged illegal loan. *These actions were taken by virtue of Defendants' position in the corporation and not through an authorization obtained through alleged false proxy statements.* . . . 'The purpose of section 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosures in proxy solicitations.'

(Emphasis added.) *Epic, supra* at 776–77.

In opposition to the defendants' motion to dismiss the securities claim, plaintiff argues that "transaction causation" is present in the case *sub judice* because the challenged proxy materials failed to disclose that the directors seeking election have been "stealing from the very corporation they desire to continue to 'serve,'" citing *United States v. Fields,* CCH Fed.Sec.L.Rep. § 96,074 at 91,-857 (S.D.N.Y.1977). Notwithstanding that the alleged inadequately disclosed self-dealing in *Fields* occurred prior to the challenged proxy solicitation, such that a proxy "authorization" was not indispensable to

---

**2.** The weight of authority appears to view the rule of *Van Dusen v. Barrack* as determinative of which circuit's interpretation of federal law a transferee district should apply. *See, e. g., In re Plumbing Fixtures Litigation,* 342 F.Supp. 756 (Jud.Pan.Mult.Lit.1972); *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402 (2d Cir.

1975). This position has been questioned, however, because *Van Dusen* involved conflicting *state* wrongful death policies while, in theory, *federal* law should be nationally uniform, whether or not it is in fact. *See In re Pittsburgh & L. E. R. R.,* 543 F.2d 1058, 1065 n. 19 (3d Cir. 1976).

the consummation of the alleged misconduct, as in the case *sub judice,* the *Fields* court held that the required "transaction causation" was present:

> Where individuals present themselves for election as directors for a corporation, and fail to disclose in proxy solicitations that they have, in effect, been stealing from the very corporation which they desire to continue to "serve" the necessary element of "transaction causation" is present, and a violation of section 14(a) arises. To hold otherwise would make a mockery of the proxy statute and regulations.

*Fields, supra* at 91,857. In this court's view, however, *Fields* is distinguishable from the case *sub judice* because it was a criminal action involving allegations of direct depredation of corporate assets, through kickback payments to individual directors. In the case *sub judice* the allegations involve more subtle and indirect means of appropriating corporate assets rather than outright looting. Because *Fields* represents an extreme case of director misconduct, it is inapposite to the present allegations.

 Accordingly, after viewing the allegations in the complaint most favorably to the plaintiff, the court concludes that under the weight of the applicable precedents the facts as pleaded fail to show the requisite "transaction causation" to· state a claim under section 14(a) because the proxy solicitation was not a link in the accomplishment of the alleged wrongs. *See Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). The alleged improper amendments in the management contract with Management Co. and fraudulent acceptance of the loan prepayment by Charter Medical, without penalty, were not the subject of the challenged proxy solicitation. In this regard, language from the section 14(a) decision in *Levy v. Johnson,* CCH Fed.Sec. L.Rep. § 95,899 (S.D.N.Y.1977), is most appropriate:

If the court were to adopt the plaintiff's standard, any suppression of a director's impropriety in proxy materials for reelection, followed by a further impropriety after reelection, would state a claim under federal law. *It was not intended that, by reason of a proxy violation, a purely state claim might be so transformed into a federal cause of action.*

(Emphasis added.) *Levy, supra* at 91,324. *Cf. Standard Federal Savings & Loan Association v. Mobile America Corp.,* Civil No. 76–1016A (N.D.Ga. Sept. 26, 1977). If there were any violations by the defendant directors in the case *sub judice,* they represent a breach of the directors' fiduciary duty to ANRET and its shareholders rather than a violation of the proxy provisions under the Securities and Exchange Act of 1934. Therefore, for the above reasons, defendants' motion to dismiss plaintiff's claim under section 14(a) of the Securities and Exchange Act of 1934 is hereby granted. However, because plaintiff alleges that there is complete diversity of citizenship between the parties and the amount in controversy exclusive of interest and costs exceeds the sum of $10,000, this court retains subject matter jurisdiction over the plaintiff's claims grounded on defendants' breach of their common law fiduciary duties.[3]

### IV.

 The motion of defendant Fickling & Walker to dismiss the claims against it is supported by the affidavit of Mr. William A. Fickling which states that Fickling & Walker has had no ownership interest in F & W Investments since more than ten months before the first allegedly improper transaction occurred. Therefore, because the only allegation in the complaint linking Fickling & Walker with claims asserted by plaintiff is the statement in paragraph 6 that "Management Co. is equally owned by Charter Medical Corporation and F & W Investors, Inc., a 50% owned subsidiary of

---

3. Defendants have suggested that complete diversity of citizenship is lacking herein. However, the court will reserve ruling on this issue pending a formal motion by defendants so that plaintiff may have an opportunity to reply.

Fickling & Walker," defendant Fickling & Walker contends that plaintiff can prove no set of facts which will entitle her to relief against it. However, this contention overlooks paragraph 9 of the plaintiff's amended complaint which alleges:

9. As a result of the roles of Management Co. and its shareholders in the organization of the trust, their positions as trustees, their control over the proxy machinery of the trust, their control over the remuneration of the trustees, defendants Fickling, Junior, Roan, Management Co., Charter Management Corporation, Fickling & Walker, and F & W Investments, Inc. dominate and control, and have dominated and controlled, the trustees and the practices and policies of the trust.

Moreover, paragraphs 11, 13, and 14 of the amended complaint allege that all the defendants were parties to a conspiracy to perform the wrongful acts charged herein. Because the allegation of Fickling & Walker's membership in this conspiracy is not dependent upon its ownership of interest in F & W Investments, Inc., defendant Fickling & Walker's motion to dismiss the complaint against it should be and is hereby denied.

## V.

The motion of Charter Management to dismiss the complaint against it is based on the contention that it is a different Charter Medical Management Company than the one referred to in paragraph 6 of plaintiff's complaint:

Atlanta National Management Company was incorporated in the state of Georgia in June 21, 1971, under the name of Charter Medical Management Company and changed its name to Atlanta National Management Company on May 22, 1973. Charter Medical Management Company was incorporated in the state of Georgia under that name on March 27, 1974, and still has the same name. The primary purpose of Charter Medical Management Company is to own, operate and manage hospitals, nursing homes and long-term health care facilities, while the primary purpose of Atlanta National Management Company is to provide management services for real estate investment trusts, particularly Atlanta National Real Estate Trust.

Thus, it appears that Charter Medical Management Company and Atlanta National Management Company are separate and distinct corporations and that plaintiff's claim against Charter Medical Management Company based upon the allegation that Atlanta National Management Company is successor in interest to Charter Medical Management Company is without support in fact. Accordingly, the motion of Charter Management to dismiss the plaintiff's complaint against it is hereby granted.

## VI.

While rule 23.1 of the Federal Rules of Civil Procedure does not require the plaintiff in a derivative action to post bond or security for expenses for the benefit of the entity for whom the action is brought, it is well settled that a federal court must require such a deposit if the state in which it sits imposes such a requirement on plaintiffs bringing derivative suits in that state's courts. *Cohen, Executrix v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Because this action was originally brought in the United States District Court for the Southern District of New York and transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a), defendants contend that this court must apply the applicable New York law. Section 627, General Business Corporation Act of New York, provides:

In any action specified in section 626 (shareholder's derivative action brought in the right of the corporation to procure a judgment in its favor), unless the plaintiff or plaintiffs hold 5% or more of any class of the outstanding shares or hold voting trust certificates or beneficial interests in shares representing 5% or more of any class of such shares, or the shares, voting trust certificates and beneficial interest of such plaintiff or plaintiffs have

a fair value in excess of $50,000, *the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney's fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which the corporation may become liable under this chapter . . . .*

(Emphasis added.) Contrariwise, the plaintiff contends that Georgia rather than New York law should determine whether the posting of security is required in the case *sub judice.* Under Georgia law, a derivative plaintiff is not required to post security for costs. *See* Official Comment to Ga. Code Ann. § 22–615. For the reasons discussed *supra,* the court concludes that it must look to New York rather than Georgia law in determining whether the posting of security is required. *Cf. Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir. 1974).

▆ Assuming, arguendo, that New York's security for expenses statute applies to real estate investment trusts in the same manner as if they were corporations, a Maryland trust doing business in Georgia is entitled to no greater rights under the laws of New York than a "foreign corporation." In this regard, the law in New York is that a foreign corporation may avail itself of the state's security for expenses statute only if it is "doing business" in New York. *See* Business Corporation Law of New York § 1319(a)(3). In applying New York law, this court has previously held:

> The generally stated standard is that the showing of business conduct, regular and continuous, is essential to bring a foreign corporate plaintiff within the operative provisions of the "doing business" statute.

*Textile Banking Co. v. Colonial Chemical Corp.,* 285 F.Supp. 824 at 828 (N.D.Ga.1967). According to the affidavit of Mr. T. L. Roan, previously discussed, ANRET has its principal and only place of business in Atlanta, Georgia, and keeps all of its records

in its office in Atlanta, and has no investments in real property in the state of New York. Nor did ANRET's appearance to defend this lawsuit in the United States District Court for the Southern District of New York constitute "doing business" in New York. *See* Business Corporation Law of New York § 1301(b). Accordingly, this court concludes that because ANRET is not "doing business" in the state of New York, it is not entitled to security for expenses under section 627 of the Business Corporation Law of New York. Therefore, for the above reasons, defendants' motion to require plaintiff to post security for expenses is hereby denied.

### VII.

Because defendants' motion for security and expenses has been denied, it appears that the plaintiff no longer requires an order permitting her to examine and copy ANRET's lists of the names and addresses of its shareholders of record. Accordingly, plaintiff's motion to examine ANRET's list of shareholders is hereby denied.

IT IS SO ORDERED this 2nd day of February, 1978.