Charlotte HOROWITZ, et al.

v.

Thomas G. POWNALL, et al.

Civ. No. Y–82–3011.

United States District Court,
D. Maryland.

March 14, 1984.

Sheldon D. Camhy, New York City, and Kurt Hunciker, New York City, for plaintiffs.

George Beall, Baltimore, Md., and Robert C. Myers, New York City, for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The plaintiff, a stockholder in the Martin Marietta Corporation, has filed an amended complaint against the directors of Martin Marietta charging them with certain violations of federal securities laws and with breach of their fiduciary duty. The defendants have filed a motion to dismiss, or for partial summary judgment, as to the count of the amended complaint—the "second claim"—which seeks damages.

Rather than resurrect the tortured history of the intercorporate transactions involved here, this Court will refer to discussions of the earlier stages of these acquisitions contained in published decisions, *Martin Marietta Corp. v. Bendix Corp.*, 547 F.Supp. 533 and 549 F.Supp. 623 (D.C.Md. 1982). Since those decisions were released, the stalemate between Martin Marietta and Bendix was averted through an agreement in which Martin Marietta sold all of its Bendix stock to the Allied Corporation, Bendix sold most of its Martin Marietta stock to Allied Corporation, Allied agreed to certain voting restrictions on its Marietta stock, and Allied eventually acquired Bendix.

In their motion to dismiss, the defendants make three claims as to why dismissal or summary judgment is appropriate: they argue (1) that the plaintiff is attempting to bring a derivative action which would result in damages being awarded to only a portion of stockholders (the class which the plaintiff represents) and that such an action is either (a) prohibited by an earlier order of this Court or (b) prohibited by Maryland state law; (2) that the plaintiff may not bring this action because she has not suffered any actual damages from the alleged acts of the defendant; and (3) that the plaintiff has failed to state a claim in her allegations of violations of Section 14 of the Williams Act. Each of these challenges to the plaintiff's action will be addressed in turn.

## CLASS ACTION

The defendants first maintain that under existing law, the only claim which the plaintiff can maintain on behalf of her class is a derivative claim on behalf of the corporation against its directors. They also maintain that such a claim is barred by this Court's order of February 1, 1983, which ordered the plaintiff to choose whether she was maintaining a class action or derivative suit, and by the plaintiff's subsequent choice of a class action. The defendants have misconstrued the order of this Court, which gave the following reason for forcing the plaintiff to make such an option:

> The interests of the proposed class and the interests of Martin Marietta (the real plaintiff in the derivative claims) conflict on the important issue of who should recover damages for the allegedly illegal actions of Martin's directors and officers. If it is proved that the directors and officers violated the law, the proposed class and Martin would be in direct competition with each other for the damages that the directors and officers would be required to pay in compensation for their illegal actions.

In response to the letter, the attorney for the plaintiff did indeed inform the Court on February 9 that:

> We intend to prosecute the class action claims alleged in the Horowitz complaint as well as the claim for injunctive relief...

Now, the defendants say, the plaintiff has restricted herself to a class action claim, while attempting to maintain a derivative action here.

However, the Court's intention, as expressed clearly in the letter of February 1, was that the plaintiff choose between two different methods of allocating damages. The plaintiff has chosen to pursue damages for her class of stockholders, rather than on behalf of the corporation, but her claims may properly be derivative claims under the Court's order. The remaining question, which is more problematic, is whether, under Maryland law, a plaintiff may pursue damages for a selected class of stockholders when the basis of her claim is derivative in nature. The answer to that question depends largely on whether a case decided by Maryland's highest court in 1917 continues to be viable.

One commentator has summarized *Matthews v. Headley Chocolate Co.*, 130 Md. 523, 100 A. 645 (1917) as follows:

> In 1917 it was decided by the Court of Appeals in *Matthews v. Headley Chocolate Co.* that stockholders cannot complain of wrongful acts of directors or others which occurred prior to their purchase of stock, and that a stockholder who purchased his shares after such wrongful acts cannot share in any recovery as a result of a successful suit brought by other stockholders or brought in the name of the corporation. Brune, *Maryland Corporation Law and Practice*, § 255 at 270 (1953).

*Headley Chocolate* also held that stockholders who were directors and who had engaged in the wrongdoing which formed the basis of the action would be barred from recovering. The remaining stockholders, those who owned stock at the time of the wrongdoing but were not culpable, would receive their *pro rata* share of the damages, even though they were suing in a derivative action, in the name of the company.

*Headley Chocolate* has been neither expressly overruled nor reaffirmed by the Maryland Court of Appeals, but it would appear to have continuing vitality. In the relatively recent case of *Bangor Punta Operations v. Bangor & A.R. Co.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974), *Headley Chocolate* was cited for the proposition that purchasers of the stock of a corporation could not maintain a claim against the directors of the corporation, or its former owners, for damages caused the corporation before they acquired the stock.

The same principle would apply here, where the plaintiff has charged the defendants with engaging in an illegal transaction with the Allied Corporation in which the directors of Marietta acted to the detriment of their employer and to the benefit of Allied. While it is true, as the defendants maintain, that Allied has not been accused of any wrongdoing, the principle of *Headley Chocolate* and *Bangor Punta* is that courts of equity should avoid granting windfall profits to those who purchase stock subsequent to the wrongdoing alleged. Here, such a principle could bar those excluded from the plaintiff's class from recovering for the wrong allegedly done Marietta by its directors, and the plaintiff and her class could recover their proportionate share of the damages done to the corporation. Consequently, the defendants' motion to dismiss the breach of fiduciary duty claims brought by plaintiff on behalf of her class will be denied.

## INJURY TO PLAINTIFF

The defendants have claimed, and the plaintiff has acknowledged, that she is entitled to receive only her actual damages under Section 14(e) of the Williams Act, (15 U.S.C. § 78n(e)), which the plaintiff claims the defendants violated by failing to disclose material facts in the Schedule 14D–9 filed in opposition to Bendix's tender offer. Furthermore, the defendants note that

since the date on which the amended complaint was filed, the price of the Martin Marietta stock, which the plaintiff has continued to hold, has been more than the highest price offered by Bendix for the stock, $48 per share. Therefore, the defendant's claim, the plaintiff has benefited rather than lost by her failure to tender her shares of stock.

■ Courts have recognized that a non-tendering stockholder may have a private cause of action under Section 14(e) for material misstatements or nondisclosures which caused the non-tendering stockholder injury. *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 946 (2d Cir.1969). However, a non-tendering shareholder who has filed an action against an opponent of the tender offer must show that he or she has been injured by retaining the stock instead of selling it at the premium offered by the tender offeror:

> To maintain a cause of action under Section 14(e), a private litigant must allege that he has been injured as a result of the defendant's violation of that section ... Plaintiffs who cannot prove damages have no cause of action. 11A Gadsby, *Business Organizations, The Federal Securities Exchange Act of 1934*, § 7A.03[3][e][i] at p. 7A–95.

The defendants have supplied information, verified by affidavit, which shows that, as recently as June of last year, the plaintiffs could have sold their Martin Marietta stock for as much as $59.25 a share, a substantial increase over the highest price offered by Bendix. The plaintiff notes, however, that a recent rise in prices of most of the stocks traded on the New York Stock Exchange has resulted in record prices and a new high for the generally accepted indicator of stock prices. The plaintiff argues that the defendants should not be allowed to rely on the general rise in stock prices to defeat this action.

■ If the market price of Martin Marietta stock had been at or above the $48 offered and paid by Bendix at the time of the offer or shortly thereafter, non-tendering stockholders would not have been in-

jured by the failure to accept the tender offer, and this action would be subject to summary judgment. However, the information supplied by the defendants shows that the market price of Martin Marietta stock did not reach the level of Bendix's highest offer until April of 1983, some six months after Bendix consummated its tender offer. Therefore, unless the defendants can show that the rise in stock prices up to June of 1983 was caused by the violations alleged by the plaintiffs, thus offsetting the loss to the plaintiffs of the premium offered by Bendix, the plaintiffs should be able to show that they did indeed suffer damages to the extent of the premium offered by Bendix (which would appear to amount to more than $12 a share, the difference between the $48 paid by Bendix and the $35 and ⅛ per share at the close of the market on September 27, 1982). If, as the plaintiffs claim, the stock price has fortuitously risen, that would not insulate the defendants from damages they would owe the plaintiff and her class if they in fact illegally caused the plaintiffs to forego their Bendix premium. The plaintiff and her class could have sold their stock to Bendix and reinvested the proceeds (including the premium) to acquire greater profits.

## SECTION 14(e) VIOLATIONS

The plaintiff has alleged that the defendants violated Section 14(e) of the Williams Act (15 U.S.C. § 78n(e)) by failing to disclose, in its opposition to the Bendix tender offer, the following information:

(1) The fact that Martin Marietta's own tender offer for Bendix shares would require obtaining a loan of $900 million, which would seriously hamper the financial position of Martin Marietta;

(2) In labeling the Bendix offer inadequate, the defendants failed to include in their calculations the decrease in net worth of the corporation due to the loan discussed above;

(3) The uncertain legal and financial positions of the two companies if both tender offers were consummated;

(4) That the defendants had instituted the tender offer for Bendix shares to "coerce" Bendix into withdrawing its tender offer for Martin Marietta shares; and

(5) That the defendants instituted the Martin Marietta tender offer for Bendix shares as a means of acquiring a "hostage" to force a trade for Martin Marietta stock acquired by Bendix.

Section 14(e) of the Williams Act provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make a statement made, in the light of the circumstances under which they are made, not misleading ... in connection with any ... solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. 15 U.S.C. § 78n.

17 C.F.R. § 240.14d–100 specifies the information to be included in the Schedule 14D–9 which the target company of a tender offer is required to file in making its recommendation to security holders under 17 C.F.R. § 240.14d–9(a)(1). Item 4 of Schedule 14D–9 requires the individual signing the form to (a) state the "nature of the ... recommendation" and to (b) "state the reason(s) for the position ... stated in (a) of this item."

This Court cannot exclude the possibility, as a matter of law, that at least one of the items allegedly omitted from the 14D–9 by the defendants—that Martin Marietta had secured a $900 million line of credit to purchase shares of Bendix—was a material fact that should have been included. The Court is guided by the United States Supreme Court's standard for determining materiality on motions for summary judgment:

Only if the established omissions are "so obviously important to an investor that reasonable minds cannot differ on the question of materiality" is the ultimate issue of materiality appropriately resolved "as a matter of law" by summary judgment. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

This Court cannot determine, at this time, that the company's plans to incur a $900 million debt to purchase the shares of Bendix is so "obviously unimportant" in the mind of an investor attempting to determine whether to sell or retain shares of Martin Marietta that a grant of summary judgment is appropriate. Such a loan may have had a serious effect on the capitalization of Martin Marietta, which could have affected the market price of its stock.

The other violations alleged by the plaintiff would not appear to be material. It is difficult to see how the defendant's plans with regard to the Bendix stock could otherwise affect the determination of a Martin Marietta stockholder whether to retain or tender shares. But because the defendant's motion to dismiss, or in the alternative, for summary judgment, will be denied, the Court does not feel it appropriate to address these issues at this point. Accordingly, denial of the defendants' motion is without prejudice to renewal of motions for summary judgment on the plaintiff's claims with regard to certain of the alleged violations of Section 14(e).