George D. NEIDERT and Otto M. Neidert, Plaintiffs-Appellants,

v.

Charles A. NEIDERT, Defendant-Appellant,

and

Neidert, Inc., Defendant-Appellant.

Nos. 12077, 12086.

Missouri Court of Appeals, Southern District, Division One.

June 29, 1982.

Motion for Rehearing or to Transfer Denied July 20, 1982.

Application to Transfer Denied Sept. 13, 1982.

---

C. R. Rhoades, Rhoades & Perigo, Neosho, for plaintiffs-appellants.

John Sims, Ruyle, Sims & Lampo, Neosho, for defendants-appellants.

FLANIGAN, Judge.

A farm operation, conducted through a closely held family corporation, proved unprofitable and this shareholders' derivative action (Rule 52.09)[1] is an aftermath. Plain-tiffs are George D. Neidert and Otto M. Neidert, each a shareholder in Neidert, Inc., a Missouri corporation. Defendants are Neidert, Inc. and Charles A. Neidert. The parties, throughout the trial, referred to Charles A. Neidert by his nickname "Al" and this opinion will do so. At the material times, Al was president, sole director, and a shareholder of Neidert, Inc.[2]

The first amended petition, on which this action was tried, was in three counts, each directed against defendant Al and each seeking judgment in favor of Neidert, Inc. Count I sought damages in the sum of $177,000 and claimed that Al wrongfully encumbered corporate assets, sold corporate assets for less than market value, operated the corporation at a loss, used corporate assets for his personal benefit, disposed of corporate assets "without just cause," and permitted improvements on the farm to deteriorate. Count II sought damages in the sum of $55,000 and claimed that Al received money for use of the corporation but failed to account for it or to pay it to the corporation. This count also alleged that Al kept the corporate records in a careless and fraudulent manner. Count III sought $100,000 in punitive damages and claimed that Al's conduct as alleged in Count II was willful, malicious and done with intent to harm "plaintiff."

Defendant Al filed a five-count cross-claim against defendant Neidert, Inc. Count I sought $10,800 for services rendered the corporation for the 36 months preceding January 1972. Count II sought $5,665.05 based on a loan in that amount made by Al to the corporation. Counts III, IV and V were brought by Al as assignee under three written assignments based on loans made to the corporation by the respective assignors.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R. and all references to statutes are to RSMo 1978, V.A.M.S.

2. A third original defendant was Dr. Everett R. Lerwick who became sole director and president of Neidert, Inc. on December 28, 1972, after Al ended his connections with the corpo-ration. Count IV of the petition charged defendant Lerwick with misappropriation of corporate assets and "waste of the assets," including permitting improvements on the farm to deteriorate. Prior to the trial, Count IV was dismissed, apparently pursuant to a settlement, and Lerwick was no longer a party.

The trial court, sitting without a jury, denied plaintiffs relief on Counts I, II and III of the petition and plaintiffs appeal from those rulings. On the crossclaim of Al against defendant Neidert, Inc., the trial court awarded Al $10,800 on Count I and $5,665.05 on Count II,[3] from which rulings defendant Neidert, Inc. appeals. On Counts III, IV and V of the crossclaim the trial court found in favor of Neidert, Inc. and against Al. Al appeals from the latter rulings.

None of the parties invoked Rule 73.-01(a)(2) with respect to a request for findings of fact and a statement of the grounds for the trial court's decision. Although the trial court made voluntary findings and conclusions, they "are not the proper basis for assigning error and the general finding is the sole basis for review." *Prudential Property & Cas. Ins. v. Cole*, 586 S.W.2d 433, 435[4] (Mo.App.1979). To similar effect see *Turpin v. Watts*, 607 S.W.2d 895, 899 (Mo.App.1980); *Key v. Gregory*, 553 S.W.2d 329, 333[4] (Mo.App.1977); *Swetnam v. U. S. By-Products Corporation*, 510 S.W.2d 829, 830[1] (Mo.App.1974). The contentions raised on the appeals will be reviewed in light of the foregoing restriction. Plaintiffs' appeal will be considered first.

▉ Plaintiffs' first point is that the trial court erred in denying plaintiffs relief on Counts I, II and III of the petition for the reason that the "weight of the evidence" showed that Al, as sole director and president of the corporation, engaged in "self-dealing," refused to deliver to plaintiffs their respective stock certificates, denied plaintiffs access to the corporate records, allowed "extensive waste" of the corporate assets, and sold the principal assets of the corporation, over plaintiffs' objection, at less than their fair market value.

▉ "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. bank 1976). This court has no such firm belief.

It is true that Al, as sole director and president of the corporation, did business with the corporation, but he did so as a benefactor and not as a predator. Al had his own business in Neosho, Missouri. The farm owned by the corporation was located near St. James, Missouri, about 180 miles from Neosho. From time to time Al lent money to the corporation. On one occasion he sold some copper tubing to the corporation but Al realized no profit on that transaction. "It was billed at my cost."

Al's dealings with the corporation were neither unconscionable nor cloaked in secrecy. As was the situation in *Scott v. Potter Plumbing and Heating, Inc.*, 596 S.W.2d 492, 494 (Mo.App.1980), "This was a small, family-held corporation and all of the participants were well aware of the [transactions], ... all reflected in the corporate ledgers and tax returns." As pointed out in *Scott*, it is not inherently improper or illegal for a corporation to purchase property or borrow money from its stockholders, directors or officers. Moreover, "The relation alone of a director or officer of a corporation does not prevent the director or officer from doing business with the corporation at a profit.... The prohibition encompassed in the above general rules is directed at unconscionable and secret profits." *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425, 431–432 (Mo.1968).

The trial court found that Al accounted for all monies due the corporation, did not appropriate any corporate funds to his own use, and was not guilty of mismanagement, fraudulent or otherwise. The record supports these findings. In addition, although there was no express finding on these points, the record justified the trial court in finding, as inferentially it did, that Al did not refuse to deliver to plaintiffs their re-

---

3. The trial court's judgment with regard to its ruling on Count II labels it Count I. It is clear from the entire judgment that this is a typo- graphical error which should be corrected on remand.

spective stock certificates, which they in fact received; that Al did not deny plaintiffs access to the corporate records, which they in fact inspected; and that Al was not guilty of waste of the corporate assets.[4]

Some of the personal property of the corporation, primarily farm equipment, was sold at public auction on October 23, 1971. The sale was prompted by the death of Laurence Neidert, the manager of the corporate farm, and by the fact that the farming activities had proved unprofitable. Plaintiffs, and all the other shareholders, had advance notice of the sale and indeed plaintiffs themselves helped Al to prepare for the sale by hauling portable corrals and a loading chute from Neosho to St. James where the sale was held.

Sec. 351.400 sets forth certain procedures with respect to the sale "of all, or substantially all, the property and assets ... of a corporation, if not made in the usual and regular course of its business," and § 351.-405 accords to a dissenting shareholder certain rights in the event of such a sale. These statutes are of no aid to plaintiffs here for the reason that plaintiffs failed to show, and their brief does not claim, that the October 23 sale involved "all, or substantially all, of the property and assets" of the corporation.

Plaintiffs' first point has no merit for the reason that the weight of the evidence, with respect to Counts I, II and III of the petition, not only was not in plaintiffs' favor but in fact favored Al.

Plaintiffs' second point is that the trial court erred in denying plaintiffs relief on Counts I, II and III of the petition because the ruling was based on a finding "that plaintiffs had not made demands for institution of legal proceedings on [Al] or other shareholders, as a prerequisite for a shareholders' derivative action, pursuant to the requirements of Rule 52.09, although the uncontroverted evidence showed that such requests were made or would have been obviously futile."

It is true that of the 36 voluntary "findings of fact" made by the trial court, finding 17 states that plaintiffs made no demand on any of the shareholders or directors of the corporation to institute the action against Al. The other voluntary findings, however, make it clear that finding 17 played no part in the trial court's judgment. When the instant action was commenced, Al had been replaced as president and sole director by original defendant Lerwick, mentioned in footnote 2. Lerwick was also the holder of the majority of shares. It is clear that the trial court felt that it would have been futile for plaintiffs to have made a demand upon Lerwick for the corporation to sue Al, and especially so because they sued Lerwick himself. A sufficient answer to plaintiffs' second point is that it is factually unsound and that the trial court's ruling was not based on finding 17.

■ The first point of defendant-appellant Neidert, Inc. is that the trial court erred in awarding Al judgment on Count I and Count II of the crossclaim "because said claims were made outside the five-year statute of limitations, § 516.120." The statute of limitations is an affirmative defense, Rule 55.08. The answer of defendant Neidert, Inc. to Count I of the crossclaim made no mention, even in general terms, of this affirmative defense. Accordingly it was not properly raised and this court "need not give it consideration." *Tudor v. Tudor*, 617 S.W.2d 610, 613 (Mo.App.1981). *Tudor* cites authorities holding that a party desiring to avail himself of the statute of limitations, "must plead the particular statute upon which he relies," ... "must plead the very provision...." In its answer to

---

4. On the issue of waste, plaintiffs claimed that Al permitted some of the buildings on the farm to deteriorate. Plaintiffs' evidence against Al was vague. Plaintiffs made similar claims against former defendant Lerwick and the evidence tended to show that the deterioration, if such there was, took place after 1972 when Lerwick replaced Al as the principal officer of the corporation.

One of the plaintiffs testified that the two plaintiffs "sued Lerwick in federal court alleging waste of the property between 1972 and 1978. Lerwick let it run down and it nearly went to rot."

Count II of Al's crossclaim defendant Neidert, Inc. pleaded "that the claims stated in Count II are barred by the statute of limitations." Under the foregoing authorities, this mode of pleading was insufficient to raise the affirmative defense of the statute of limitations. The first point of defendant Neidert, Inc. has no merit.

■ The second point of defendant Neidert, Inc. is that the trial court erred in awarding Al $10,800 on Count I of the crossclaim for the reason that the services which Al rendered the corporation "were not authorized by the by-laws of the corporation, were performed prior to authorization, and should be considered gratuitous."

At a special meeting of the shareholders held on December 28, 1971, by a four to two vote, the following motion was carried: "That the corporation pay to Al the sum of $300 per month for management, expenses and services rendered to the corporation for a period of 36 months for a total of $10,-800." Voting in favor of the motion were Al, Marie Neidert, Harry Robbs, Jr. and Helen N. Been. Voting against the motion were George D. Neidert and Otto M. Neidert, the plaintiffs here. Each voter held ⅙ of the outstanding shares.

The evidence showed that Al, during the 36 months in question, performed services for the corporation which were above and beyond services normally performed by an officer or director. Al frequently communicated with his brother Laurence Neidert, who was the farm manager. The farm was located 180 miles from Al's home, and he made frequent, perhaps 30, trips there, for which he was not reimbursed. Al bought and sold livestock and equipment for the corporation and arranged for their transportation. Al, through his own employees, kept the corporate books and records.

The record supports the finding that the corporation was benefited by Al's extraordinary services and that the sum of $10,800 was reasonable compensation therefor. Even if Al's vote on the motion were not

counted,[5] the motion received the favorable vote of a majority of the quorum at the shareholders' meeting. See § 351.265.

■ "[W]here the matter under consideration is one that calls for the business judgment of a board of directors or of the majority shareholders and if this judgment is exercised fairly and honestly courts will not interfere. The only time that a court of equity will interfere, as we have stated, is when the matter complained of is ultra vires, illegal, fraudulent and, therefore, cannot be ratified by a majority of the stockholders or where the business judgment is exercised unfairly and in a dishonest manner." *Saigh v. Busch*, 396 S.W.2d 9, 22 (Mo.App.1965), cited with approval in *Broski v. Jones*, 614 S.W.2d 300, 304 (Mo.App. 1981). See also *Triplett v. Grundy Elec. Cooperative, Inc.*, 389 S.W.2d 401, 407 (Mo. App.1965).

■ In *Triplett* it is pointed out that the stockholders "may ratify informal or irregular action of the board of directors which is within the corporate powers. A ratification by stockholders at a stockholders' meeting may be by a vote of the majority where the act might have been authorized by a majority in the first instance.... The ratification of an act or contract which has been entered into on behalf of a corporation, without proper authority therefor, relates back to the time when the act or contract was entered into." The second point of defendant Neidert, Inc. has no merit.

Defendant Neidert, Inc.'s third point is that the trial court's rulings in favor of Al on Counts I and II of his crossclaim were erroneous because such rulings implied that Harry Robbs, Jr. and Marie Neidert validly voted their respective shares of stock at the shareholders' meeting of December 28, 1971, when in fact they had no right to do so. Two reasons, each invalid, are advanced in support of that contention. The first is that the respective stock certificates of those two shareholders were not delivered

---

**5.** Cf. 175 A.L.R. 577 (participation by corporate director in vote or meeting fixing compensation

for his own services). See also Fletcher Cyclopedia Corporations, Vol. 5, § 2139, p. 521.

to them prior to the deaths of their respective spouses and that such delivery was essential. The second is that each of the spouses who died was also survived by minor children who took an interest in the shares of the deceased parent by intestate succession.

■ Both of the shareholdings in question were held in joint tenancy. One certificate was issued to Harry Robbs, Jr. and Lydia Robbs "as joint tenants and not as tenants in common," and the other was issued, with similar language, to Laurence Neidert and Marie Neidert. The shares represented by both certificates were paid for in full and the certificates were properly executed. They remained, however, among the corporate records and were not physically delivered to their respective holders prior to the deaths of Laurence Neidert and Lydia Robbs. Under the authority of the highest court in the land, such delivery was unnecessary.

■ "Without express regulation to the contrary, a person becomes a stockholder by subscribing for stock, paying the amount to the company or its proper officer, and being entered on the stock-book as a stockholder. He may take out a certificate or not, as he sees fit. Millions of dollars of capital stock are held without any certificate, or, if certificates are made out, without their ever being delivered. A certificate is authentic evidence of title to stock; but it is not the stock itself, nor is it necessary to the existence of the stock. It certifies to a fact which exists independently of itself." *Pacific Nat. Bank of Boston v. Eaton*, 141 U.S. 227, 234, 11 S.Ct. 984, 985, 35 L.Ed. 702 (1891). See also Fletcher Cyclopedia Corporations, Vol. 11, § 5094, p. 58.

Upon Lydia's death the entire estate in the stock was in her surviving husband, Harry Robbs, Jr. "A surviving joint tenant holds under the conveyance or instrument by which the tenancy was created and not under laws regulating intestate succession." 20 Am.Jur.2d Cotenancy and Joint Ownership § 3, p. 95. As surviving joint tenant Harry Robbs, Jr. had the right to vote the stock. The same situation prevailed with respect to the stock owned by Marie Neidert and her husband Laurence Neidert. As surviving joint tenant of the certificate which they held, Marie Neidert had the right to vote that stock.

■ Defendant Neidert, Inc.'s fourth point is that the trial court erred in ruling in favor of Al on Count II of his crossclaim. The minutes of a special meeting of the board of directors held on May 1, 1972, recognized the fact that loans were made to the corporation, in various amounts, by the six shareholders, including the two plaintiffs, Al, and three other shareholders who, by separate written assignments, later assigned their rights to Al. The minutes reflect that a motion was made, by Al, seconded, and unanimously carried, "that the corporation recognize liability to said stockholders in the respective amounts set opposite their names *and that said loans be paid if and when sufficient monies become available in the corporation to permit payment without jeopardizing other activities of the corporation.*" Neidert, Inc. claims that the underlined language constituted a condition precedent to payment of the loans and that the condition was not met. There is no merit in this contention.

■ The record demonstrates that the loans were in fact made to the corporation. Of course, a debtor may not unilaterally impose a condition upon his duty to repay. Even if the corporate minutes were construed to constitute an agreement by the creditors to await the stipulated event, it is of no avail to Neidert, Inc. "It is generally held that an existing obligation does not lose its absolute character and become a conditional one just because a subsequent agreement of the parties postpones payment until the happening of some specified contingency wholly, or even partly, within the obligor's control. In such circumstances the cases are to the effect that payment is to be made within a reasonable time." *C. J. Hogan, Inc. v. Atlantic Corporation*, 332 Mass. 322, 124 N.E.2d 905, 909 (1955). See also *Miran Investment Co. v. Medical West Building Corp.*, 414 S.W.2d 297, 304[16] (Mo.1967).

Al, on his appeal, asserts that the trial court erred in denying him recovery on Counts III, IV and V of the crossclaim. In each of those counts Al, as assignee, sought to collect a debt owed by the corporation to his assignor, arising out of a loan. The trial court found that the loans were valid debts of the corporation and that the respective lenders had assigned their rights to Al. The trial court, in denying Al recovery on the three counts, stated that it did so because "all such assignments were made to Al without consideration," and "such assignments were made for the sole purpose of providing a more convenient enforcement of the claim[s] assigned by [the assignors] to Al." Neither of these reasons affected the validity of the three assignments and the trial court erred in denying Al recovery on the three counts.

In *Young v. Hudson*, 99 Mo. 102, 12 S.W. 632, 633 (1889), plaintiff, as assignee of a seller, sued the buyer on an unpaid account. There, as here, there was no issue concerning the sufficiency of the form of the assignment. The court said, "The assignment was regular and formal. There was evidence of defendant's admission of the original indebtedness it exhibited, but no consideration for its transfer to plaintiff appeared. The account was evidently assigned to him to collect for the use of the assignors. That did not preclude a recovery. An assignee of a chose in action arising out of contract may sue upon it in his own name, though the title was passed to him only for the purpose of collection." See also *Schepman v. Mutual Benefit Health and Acc. Ass'n*, 231 Mo.App. 651, 104 S.W.2d 777, 784[5] (1937); 6 Am.Jur.2d Assignments § 4, p. 188; § 90; p. 273.

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment in favor of Al on Counts III, IV and V of the crossclaim, and to correct the typographical error mentioned in footnote 3; in all other respects the judgment is affirmed.

GREENE, P. J., and TITUS, J., concur.