722 F.2d 389
 Sidney WOLGIN, Appellant,
v.
Stanley SIMON, Robert F. Harris, Paul A. Cox, Leonard J.
Waldron, Robert K. Crutsinger, Jerome A. Reuff, Milton F.
Lewis, Clarence C. Barksdale, Richard C. Nieman, Ted C.
Wetterau, David R. Coward, John D. Ryan, Gene K. Davis,
Charles L. Cockelreas, John S. Brizendine, Robert F. Hyland
and Wetterau Incorporated, Appellees.
 No. 82-2522.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 14, 1983.
Decided Dec. 2, 1983.
Rehearing Denied Jan. 5, 1984.
 
 Thomas C. Walsh, John Michael Clear, Michael G. Biggers, St. Louis, Mo., for individual appellees.
 Robert S. Allen, St. Louis, Mo., for appellee Wetterau Inc.; Bryan, Cave, McPheeters & McRoberts, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., of counsel.
 Gerard F. Hempstead, Suelthaus, Krueger, Cunningham, Yates & Kaplan, P.C., St. Louis, Mo., Richard D. Greenfield, Donald B. Lewis, David B. Zlotnick, Greenfield & Chimicles, P.C., Bala Cynwyd, Pa., for appellant.
 Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The appellant appeals from the dismissal of his shareholder's derivative action, for failure to state a claim upon which relief could be granted, under Fed.R.Civ.P. 12(b)(6). We affirm. D.C., 552 F.Supp. 308.
 
 I.
 
 2
 The appellant is a shareholder in Wetterau Inc., a Missouri corporation. Pursuant to Fed.R.Civ.P. 23.1, the appellant brought a shareholder derivative action alleging that sixteen present or former directors of Wetterau had breached their fiduciary duties and committed illegal acts in the course of fending off a hostile tender offer.[1] Wolgin alleged that the appellees breached their fiduciary duties by spending and wasting corporate assets in an attempt to fight off the tender offer. The appellant also alleged that one director, never served in this action, acted upon inside information and sold all his stock in Wetterau at an artificially inflated price in breach of his fiduciary duties. The appellant sought injunctive relief, an accounting and damages.
 
 
 3
 On April 19, 1982, Wolgin made a demand for suit upon Wetterau's board of directors. The board considered and rejected this demand at a meeting on May 20, 1982.
 
 
 4
 The appellant never brought a demand for suit to the shareholders of Wetterau. Wolgin alleged that such demand would be futile and unnecessary because: all of the allegations were either violations of the law or constituted a waste of corporate assets and these acts are incapable of shareholder ratification; the management of the company is entrusted to the board of directors, not the shareholders; and a demand upon the shareholders would entail prohibitive expense and an undue waste of time, neither of which the appellant could afford.
 
 
 5
 The appellees moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief could be granted, because the appellant had failed to bring a demand for suit to the shareholders and did not set forth sufficient reasons to justify this failure. On November 18, 1982, the district court[2] entered an order which granted the appellees' motion and also granted the appellant leave to amend his complaint. By a nunc pro tunc order on November 23, 1982, the district judge revoked the appellant's leave to amend.
 
 II.
 
 6
 A federal court exercising jurisdiction solely on the basis of diversity of citizenship must apply the substantive law of the forum in which it sits. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Thus, Missouri law controls the disposition of this action.[3]
 
 
 7
 The procedure for bringing a shareholder derivative action in Missouri is controlled by Civil Rule 52.09[4] which mirrors Fed.R.Civ.P. 23.1. Missouri courts have interpreted this rule to require that a shareholder make a demand for suit upon all the shareholders of a corporation before a single shareholder may bring a derivative action. Goodwin v. Goodwin, 583 S.W.2d 559, 560-61 (Mo.App.1979); Saigh v. Busch, 396 S.W.2d 9, 16 (Mo.App.1965). The rationale underlying the requirement is that the acts in question may be subject to ratification by a majority of the shareholders, see Neidert v. Neidert, 637 S.W.2d 296, 301 (Mo.App.1982), quoting Triplett v. Grundy Elec. Coop., 389 S.W.2d 401, 407 (Mo.App.1965); Saigh, 396 S.W.2d at 17, thus precluding the necessity of suit. See Caldwell v. Eubanks, 326 Mo. 185, 30 S.W.2d 976, 978 (1930) (if courts of equity were to open their doors to every dissatisfied shareholder when relief could have been obtained through corporate channels "litigation of this kind would be endless").
 
 
 8
 However, there is an exception to the rule. A shareholder need not make a demand to the other shareholders for suit where the officers or directors of the corporation have committed ultra vires, illegal or fraudulent acts because these acts cannot be ratified by shareholders. Neidert, 637 S.W.2d at 301, quoting Saigh, 396 S.W.2d at 22; Broski v. Jones, 614 S.W.2d 300, 304 (Mo.App.1981), quoting Saigh, 396 S.W.2d at 22.
 
 
 9
 On the other hand, it is insufficient simply to allege, as a legal conclusion, that relief was not demanded because it would have been futile to do so. O'Maley v. ISC Indus. Inc., 519 S.W.2d 346, 349 (Mo.App.1975); Bailey v. State Farmers Mut. Casualty Co., 377 S.W.2d 485, 488 (Mo.App.1964). To the contrary:
 
 
 10
 The rule ... requires appellants to state with particularity the facts showing why they failed to seek redress from the body of stockholders .... [T]he facts stated must be of sufficient legal import and reason as to show conclusively that a request made would be refused and, therefore, would be futile and useless. Where the facts alleged do not show conclusively that an appeal to stockholders would be refused then such facts alleged must be deemed insufficient under the rule.
 
 
 11
 Saigh, 396 S.W.2d at 21.
 
 III.
 
 12
 Wolgin contends that a demand upon the shareholders prior to bringing suit was unnecessary and that his claim comes within the exception to the shareholder demand requirement. One of the grounds Wolgin offers as an excuse for failure to make the demand is that the demand would have entailed a proxy fight, which would have taken too long and cost too much. Under Missouri law this ground is insufficient to excuse the failure to seek action from the shareholders. Saigh, 396 S.W.2d at 24.
 
 
 13
 As to the rest of the complaint, Wolgin alleges that the appellees hired a law firm, a banking firm and a public relations firm to assist in the effort to defeat the tender offer. In addition, in the course of defeating the tender offer, the appellees, on behalf of the corporation: entered into a "debt-equity" swap with another business in order to reduce the debt the board had incurred in fighting off the tender offer; entered into "golden parachute" contracts with Wetterau's executives;[5] entered into a settlement agreement with the offeror which included an agreement to buy the Wetterau shares the offeror had obtained, and to do so at a substantial premium; and bought another unrelated business with Wetterau stock in order to dilute the offeror's holdings. Wolgin argues generally that these acts are ultra vires, illegal or fraudulent and thus incapable of shareholder ratification. If true, Wolgin's claim would be within the exception to the shareholder demand rule.
 
 
 14
 However, the appellant does not allege, with sufficient particularity, that any of these actions were undertaken fraudulently, which eliminates one ground that would bring Wolgin's claim within the shareholder demand exception. A corporation acts "ultra vires," or beyond its power, when it acts in an area outside the scope of the power allowed by its charter or statute. See W. Cary & M. Eisenberg, Corporations: Cases & Materials 39 (5th ed. 1980); see also 7A W. Fletcher, Cyclopedia of the Law of Private Corporations, Sec. 3424 (rev. perm. ed. 1978). An ultra vires act is not to be confused with an illegal act. Id. The appellant has not set forth any relevant portions of Wetterau's articles of incorporation to demonstrate that the alleged acts fall outside the scope of the power established in those articles. Nor does the appellant set forth any facts which would give rise to the suggestion that the corporation acted ultra vires. Thus, another ground which would have brought the appellant within the exception to the shareholder demand rule is eliminated.
 
 
 15
 The final ground which would bring the appellant within the exception to the rule is that of illegality. As a general proposition, Missouri courts have held that where the matter under consideration is one that calls for the business judgment or discretion of a corporation's board of directors the courts will not interfere so long as that judgment is exercised fairly and honestly. Neidert, 637 S.W.2d at 301, quoting Saigh, 396 S.W.2d at 22; Broski, 614 S.W.2d at 304, quoting Saigh, 396 S.W.2d at 22. The actions taken by Wetterau's board of directors to defeat the tender offer fall under the umbrella of this general proposition.
 
 
 16
 None of the alleged acts, per se, violate Missouri law. We cannot agree that the alleged "debt-equity" swap violates either of the statutes or the provision of the Missouri State Constitution relied on by the appellant. Article XI, Sec. 7 of the Missouri Constitution,[6] and the statute written pursuant to that provision[7] seem to address the issue of guaranteeing that a corporation's shares be tendered for adequate consideration. The other statute[8] relied on by the appellant prohibits corporations from granting loans to shareholders, but it does not prohibit corporations from exchanging shares for a bona fide antecedent debt.
 
 
 17
 As regards the "golden parachute" contracts, Missouri law is clear. The compensation and other privileges which officers and directors of corporations receive are matters which can be ratified by the shareholders, and any complaint about these matters must be brought to the attention of the shareholders for their action before a suit can be brought. Neidert, 637 S.W.2d at 301; Broski, 614 S.W.2d at 304; Saigh, 396 S.W.2d at 20; Triplett, 389 S.W.2d at 407.
 
 
 18
 Regarding the other actions the appellees took to defeat the tender offer, it is impossible for us to judge whether these actions were in the best interests of the corporation. Although these acts may have constituted a breach of fiduciary duty or may have been imprudent,[9] they are acts which may be ratified by the shareholders. The shareholders are in the best position to judge whether these actions were taken wisely and the issue should have been submitted to them.
 
 
 19
 Finally, Wolgin alleges that one of the directors, never served with process in this action, acted on inside information he obtained as a director by selling his Wetterau stock at a premium in violation of securities regulations. However, the appellant does not set forth any facts which support this allegation. As such, none of Wolgin's allegations are sufficient to bring his complaint within the exception to the shareholder demand requirement.
 
 IV.
 
 20
 Wolgin also contends that he should have been allowed to amend his complaint in the district court. Specifically, Wolgin argues that he moved for leave to amend, this motion was granted by the district court and the motion was revoked by a later nunc pro tunc order which Wolgin contends was an abuse of the trial court's decision.
 
 
 21
 Fed.R.Civ.P. 15(a) declares that leave to amend "shall be given freely when justice so requires" and this mandate is to be heeded by the federal courts. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); see Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 690, 694 (8th Cir.1981).
 
 
 22
 In his brief in opposition to the appellees' motion to dismiss, the appellant concluded his argument by requesting leave to amend the complaint if the court granted the appellees' motion. Appellant argues that this request should be construed as a motion for leave to amend.
 
 
 23
 We cannot accept Wolgin's argument. Under the Rules of the Court for the Eastern District of Missouri, Rule 7(A)-(B) requires motions to be submitted and determined upon motion papers and briefs. Further, under Fed.R.Civ.P. 7(b)(1) motions are to: be made in writing; state the grounds for the motion with particularity; and set forth the relief or order sought. See 6 C. Wright & J. Miller, Federal Practice & Procedure Sec. 1485 at 421-22 (1971). The particularity requirement of Rule 7(b) is met by submitting a proposed amendment with the motion for leave to amend the complaint. 6 C. Wright & J. Miller, Federal Practice & Procedure, Sec. 1485 at 421-22; see Sansom Comm. v. Lynn, 366 F.Supp. 1271, 1278 (E.D.Pa.1973).
 
 
 24
 The appellant did not submit a proposed amendment to the trial court, nor was there anything in the appellant's brief to indicate what an amended complaint would have contained. In this context, the trial court could not, and did not, rule on the question of amendment. Further, under these circumstances a grant of leave to amend would have been inappropriate.[10] Finally, the appellant has not indicated, even during the course of this appeal, what the proposed amendment would have been. Absent some indication as to what might be added to the complaint to make it viable, the appellant is not entitled to leave to amend. National Union of Hosp. & Health Care Employees, RWDSU, AFL-CIO v. Carey, 557 F.2d 278, 282 (2nd Cir.1977); see Case v. State Farm Mut. Auto. Ins. Co., 294 F.2d 676, 678 (5th Cir.1961).
 
 
 25
 A contrary decision on this issue is supported by Nolen v. Fitzharris, 450 F.2d 958, 958-59 (9th Cir.1971). In Nolen, the plaintiffs had filed briefs in opposition to a motion to dismiss and, in the brief, requested leave to amend if the court granted the defendant's motion. The defendants had not filed a responsive pleading. The trial court granted the defendant's motion. The Ninth Circuit reversed, holding that under the circumstances the plaintiffs had the right to amend the pleading once as a matter of course. Id. We decline to adopt the Ninth Circuit's position.
 
 
 26
 On this record we cannot hold that the district court abused its discretion in denying leave to amend. We hold that to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion. This holding is in keeping with the relevant precedent in this court[11] and in a majority of the circuits. The opinion of the district court is affirmed.
 
 
 
 [1]
 See W. Cary & M. Eisenberg, Corporations: Cases & Materials 1562 (5th ed. 1980) ("A tender offer may be defined as an invitation or solicitation by a company, an individual or a group to shareholders of the 'target company' to tender their shares for sale at a specified consideration in cash or securities. The offer is usually above the current market price of the securities sought. The opportunity to tender shares remains open for only a limited period of time"). See also Mo.Ann.Stat. Sec. 409.505(10) (Vernon 1979) (" 'Takeover bid' means an offer ... made by an offeror directly or through an agent by advertisement or any other written or oral communication to offerees to purchase such number of shares of any class of equity security of the offeree company which, together with the offeror's presently owned shares, will in the aggregate exceed ten percent of the outstanding shares of such class")
 
 
 [2]
 The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri
 
 
 [3]
 Contrary to the appellant's contention, the standards set forth in Heit v. Bixby, 276 F.Supp. 217, 223-24 (E.D.Mo.1967), are not applicable to this factual situation. Heit dealt with fraudulent acts which were incapable of shareholder ratification
 
 
 [4]
 M.R.Civ.P. 52.09, in pertinent part, provides:
 [T]he petition shall be verified and shall allege that the plaintiff was a shareholder ... at the time of the transaction .... The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors ... and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.
 
 
 [5]
 Apparently these contracts required the corporation to pay $4,000,000 to the executives in the event that any outside parties acquired a significant interest in Wetterau. The most obvious reason for entering into this type of contract would be to discourage future tender offers
 
 
 [6]
 Mo. Const. art. XI, Sec. 7 provides:
 No corporation shall issue stock, or bonds or other obligations for the payment of money, except for money paid, labor done or property actually received; and all fictitious issues or increases of stock or indebtedness shall be void; provided that no such issue or increase made for valid bona fide antecedent debts shall be deemed fictitious or void. The stock or bonded indebtedness of corporations shall not be increased nor shall preferred stock be issued except according to general law.
 
 
 [7]
 Mo.Ann.Stat. Sec. 351.160 (Vernon 1966)
 
 
 [8]
 Mo.Ann.Stat. Sec. 351.165 (Vernon Supp.1983) provides:
 No note or obligation given by any shareholder, whether secured by deed of trust, mortgage or otherwise, shall be considered as payment of any part of any share or shares, and no loan of money for the purpose of such payment shall be made by the corporation to any shareholder therein; and if such loan shall be made to a shareholder, the officers making it, or who shall assent thereto, shall be jointly and severally liable to the corporation for the repayment of such loan and interest.
 
 
 [9]
 See W. Cary & M. Eisenberg, Corporations: Cases & Materials, 1596 (5th ed. 1980) (the authors discuss some of the defensive tactics a corporation might take when faced with a tender offer: "Indeed, there is nothing to prevent the target itself from purchasing its own shares .... The corporation might also issue additional shares to friendly hands in order to make the requisite number of shares for control greater. This can be accomplished by ... acquiring another company in an exchange offering .... Many of the above procedures involve the very real potential for breach of fiduciary duty ...")
 
 
 [10]
 Other courts which have considered this precise question agree. Washburn v. Madison Square Garden, 340 F.Supp. 504, 509 (S.D.N.Y.1972); see Lepman v. Everett, 333 F.2d 154, 157 (7th Cir.1964) (it was proper to deny an opportunity to amend where the plaintiff had neither requested to do so nor had indicated what the amendment would allege); Case v. State Farm Mut. Auto. Ins. Co., 294 F.2d 676, 678 (5th Cir.1961) (the liberal nature of the federal rules does not mean that it is the duty of either trial or appellate courts to create a claim which a party has failed to set out in its pleading); Nation v. United States, 512 F.Supp. 121, 124-25 (S.D.Ohio 1981) ("Although the Civil Rules do not expressly deal with the manner of presentation of amendments to pleadings, there is substantial authority for the proposition that Civil Rules 7(b)(1) and 15(a) impliedly require submission of a proposed amended pleading with the motion to amend"); Williams v. Wilkerson, 90 F.R.D. 168, 169 (E.D.Va.1981) ("there is no clear authority for the rule that parties must attach a copy of the proposed amended pleading to their motion for leave to amend. Nevertheless, because the Court does not believe that such a rule would be inappropriate and because ... authorities ... tend to support such a rule, the Court adopts this rule as the proper procedure to follow in seeking leave to amend a complaint under FRCP 15(a)"); Salwen Paper Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 79 F.R.D. 130, 133 (S.D.N.Y.1978) (the plaintiff has the burden of establishing good faith by a prima facie showing that he can establish factual support for his claims)
 
 
 [11]
 In the cases where this court has passed on the question, the proposed amendment has been before the trial court, see Kaufmann v. Sheehan, 707 F.2d 355, 357 (8th Cir.1983); Fusco v. Xerox, 676 F.2d 332, 337 (8th Cir.1982); Chestnut v. St. Louis County, Missouri, 656 F.2d 343, 345 (8th Cir.1981); Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 691 (8th Cir.1981); Asay v. Hallmark Cards, Inc., 594 F.2d 692, 696 (8th Cir.1979); Wilburn v. Pepsi-Cola Bottling Co. of St. Louis, 492 F.2d 1288, 1289 (8th Cir.1974); United Steel Workers of America, AFL-CIO v. Mesker Bros. Indus., Inc., 457 F.2d 91, 92-93 (8th Cir.1972)