**Ilse ZIMMERMAN, et al.**

v.

**Griffin B. BELL, et al.**

**Civ. No. Y–82–2658.**

United States District Court,
D. Maryland.

May 8, 1984.

Leon J. Rudd, Baltimore, Md., and Irving Bizar, New York City, for plaintiffs.

George Beall, Baltimore, Md., and Robert C. Myers, New York City, for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The plaintiffs, stockholders in the Martin Marietta Corporation ("Martin"), have filed this derivative action against several directors of the company for their activities in opposing a hostile tender offer by the Bendix Corporation. The complaint in this action alleges that the defendants breached their fiduciary duty to the corporation and engaged in a waste of corporate assets to perpetuate their control over Martin.

The complex history of this epic battle in American corporate history has been documented in prior decisions of this and other courts, *see, e.g., Martin Marietta Corp. v. Bendix Corp.*, 547 F.Supp. 533 (D.Md. 1983), and 549 F.Supp. 623 (D.Md.1983); *Horowitz v. Pownall*, 582 F.Supp. 665, (D.Md.1984); and *Zimmerman v. Bell*, 101 F.R.D. 329 (D.Md.1984). Therefore, the background of this litigation need not be repeated.

Pending before the Court is the defendants' motion to dismiss, or in the alternative, for security for costs, filed in the consolidated cases of *Zimmerman v. Bell*, Y–82–2658, and *Cohen v. Adams*, Y–82–3043. The motion argues that the claims must be dismissed because: (1) certain of the plaintiffs' claims are not justiciable, (2) the plaintiffs (except for one intervenor) did not make a demand on the board of directors before bringing this action, and (3) the plaintiffs did not make a demand on the stockholders of the corporation to bring this action before filing suit themselves.

■ The first two arguments may be dispensed with quickly. The defendants claim that the complaint must be dismissed because the allegations of the plaintiff with regard to so-called "golden parachute" contracts are not justiciable. The defendants argue that the beneficiaries of those contracts are not receiving benefits under them, and that enforcement of the contracts is not being sought. Therefore, defendants claim, no actual "case or controversy" exists, and the Court does not have jurisdiction. There are three problems with the defendants' argument. First, the directors' approval of golden parachutes— or contracts designed to discourage takeover attempts by ensuring top corporate officers continued employment or payment

of salary—formed only a portion of the claims filed by the plaintiffs, and dismissal of those claims would not result in dismissal of the entire case. Second, although the plaintiffs are seeking, as part of their relief, that the Court declare the contracts invalid (a dispute which may not yet be justiciable), the plaintiffs are also seeking damages from the defendants for breach of fiduciary duty in approving the contracts, a claim separate and distinct from relief with regard to the validity of the contracts. Third, an affidavit was filed (commendably, by the defendants) subsequent to the motion to dismiss which indicated that, in fact, one of the beneficiaries of the contracts has left the employ of Martin Marietta and is receiving benefits as a consequence, making the theretofore "unripe" controversy ripe.

The second claim of the defendants relates to the failure of the plaintiffs to have made a demand on the Board of Directors of Martin to file the suit before the plaintiffs acted. However, the intervenor in this case, Richard Ash, did indeed file a request with the Board which was rejected, and the other plaintiffs are excused from filing a request because such a demand would have been futile under the circumstances.

It should first be noted that there is some difference among courts as to whether state or federal law should be applied when a federal court, sitting in diversity, is attempting to determine whether a plaintiff seeking to bring a derivative action has satisfied the director demand requirements of Rule 23.1 of the Federal Rules of Civil Procedure. *See, e.g., Meltzer v. Atlantic Research Co.*, 330 F.2d 946, 948, *cert. denied*, 379 U.S. 841, 85 S.Ct. 80, 13 L.Ed.2d 47 (4th Cir.1964) (federal law) and *Reilly Mortg. v. Mt. Vernon S & L Ass'n.*, 568 F.Supp. 1067, 1075 (E.D.Va.1983) (state law). However, as to this issue, there would appear to be no difference between the standards to be applied under federal and state law so the Court need not address the choice of laws problem.

The federal courts have allowed recourse to this clause [excusing the demand on the board of directors] when a demand would be "futile," "useless," and "unavailing," or an "idle ceremony." Wright and Miller, *Federal Practice and Procedure*, § 1831 at pp. 379–80 (1972).

... generally speaking, the complaining stockholder must make demand upon the corporation itself to commence this action, and show that this demand has been refused or ignored. This general rule, however, is subject to a well-recognized exception, i.e., that no such prior demand is required when it would be futile. *Parish v. Milk Producers Ass'n.*, 250 Md. 24, 82, 242 A.2d 512 (1968).

Here, the plaintiffs have named as defendants all members of the Board of Directors at the time of the alleged wrongdoing. While it is true that merely naming the directors is not enough to establish that a demand would be futile, *Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir.1983), the complaint sufficiently alleges that the defendants as a body actively participated in the alleged wrongdoing in order to perpetuate their control over the corporation. Furthermore, one of the plaintiffs, intervenor Richard Ash, did in fact demand that the board take action, and the board refused, evidence that any demand by the other plaintiffs would have been futile. The fact that a demand was made and rejected in a related case excuses demand, *Schwartz v. Romnes*, 357 F.Supp. 30, 38 (S.D.N.Y.1973).

The question whether a demand on the stockholders was excused requires somewhat more discussion. The defendants' claim in this regard is grounded in Rule 23.1, which states, in pertinent part,

The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

It is clear that Maryland law will apply in deciding whether a demand on stockholders

was necessary, and whether failure to make such a demand will result in dismissal.

Rule 23.1 provides that plaintiff must allege his efforts to obtain action from the shareholders "if necessary." This qualification has been interpreted as referring the federal court to the governing substantive law for determining whether a demand on the shareholders is necessary. For example, where the source of the corporate right being enforced is a state statute, then that law controls the issue. Wright and Miller *Federal Practice and Procedure*, § 1832 at 385 (1973).

The Rule provides that a demand is also to be made upon the shareholders, prior to suit, "if necessary." This reservation is inserted since such a demand upon the shareholders, unlike the demand on the directors, is intertwined with the substantive law of corporations dealing with the power of the shareholders to ratify "fraud." Moore's *Federal Practice*, ¶ 23.1.19 at 23.1–94 (1983).

The controlling law in Maryland with regard to the requirement of a demand on shareholders is set forth in *Parish, supra*. And, again, the requirement is excused if futile.

Before a shareholder may sue the Corporation to enforce and protect its rights or to redress wrongs to it, he must first make an earnest and unsuccessful effort to obtain remedial action by the Corporation itself, first by application to the directors and then by application to the body of shareholders. But he need not do so where the circumstances are such that an application would be futile. 250 Md. at 82, 242 A.2d 512, citing *Eisler v. Eastern States Corp.*, 182 Md. 329, 333, 35 A.2d 118 (1943), and C.J. Corporations, § 1339.

The plaintiffs have argued that a demand on the stockholders would have been futile because (1) the underlying transactions are illegal and are therefore incapable of ratification by the shareholders, (2) the officers and directors of the corporation, named as defendants in this suit, manage the affairs of the corporation, and the only method for the stockholders to cause an action such as this to be brought would be to place the litigation in the hands of the defendant directors themselves, and (3) making a demand on the stockholders would result in a costly and prolonged proxy fight.

■ The first issue to be addressed, then, is whether the underlying acts would be capable of ratification by the stockholders. In their complaint, the plaintiffs allege that the directors of the corporation took the following actions (aimed at blocking the Bendix tender offer) in violation of their fiduciary duties to the stockholders: approved "golden parachute" contracts for high-level employees, placed the corporation in substantial debt to finance a counter-tender-offer for Bendix shares and then to buy back Martin Marietta shares at a premium, and seriously increased the company's debt/equity ratio. Curiously enough, the Court can find but one published decision in which a Court of Appeals has addressed the issue of whether acts taken by directors to fend off hostile tender offers may be attacked by a minority stockholder in a derivative suit where the would-be plaintiff had not demanded that the stockholders order such litigation. The Court in *Wolgin v. Simon*, 722 F.2d 389, 393 (8th Cir.1983), held that similar activities undertaken by the defendant directors could have been ratified by the stockholders if presented to them. The *Wolgin* court noted that Missouri law applied, under which stockholder ratification of fraudulent, illegal or *ultra vires* acts is forbidden. The same rule appears to apply in Maryland. *Parish*, 250 Md. at 85, 242 A.2d 512. *See also* Fletcher, *Cyclopedia on Corporations*, § 764:

Void acts or contracts of corporate officers or agents, however, cannot be ratified. This includes acts which are *ultra vires* in the strict sense of the term ... as well as acts or contracts expressly prohibited by statute or which are invalid as against public policy.

The *Wolgin* court determined that the acts which the minority stockholder complained of were not illegal, *ultra vires* or fraudulent. There, as here, the plaintiff "does not allege, with sufficient particularity, that any of these actions were undertaken fraudulently." 722 F.2d at 393. There, as here, the stockholder has not set forth "any relevant portions" of the corporation's articles of incorporation "to demonstrate that the alleged acts fall outside the scope of the power established in those articles." *Id.* And there, as here, the plaintiffs do not demonstrate that the acts alleged to have been performed by the defendants are *per se* illegal; rather, it is alleged the acts were performed with an illegal purpose (that is, the perpetuation of control over the corporation).

> The act itself must be illegal, in order to preclude shareholder ratification, since a legal act which is merely accompanied by an underlying wrongful purpose may nevertheless be ratified. Fletcher, *Cyclopedia of Corporations,* § 1104 (pocket part, 1983).

Consequently, the Court finds that, under Maryland law, the alleged acts which the defendants performed could have been ratified by the stockholders.

■ Likewise, the plaintiff's third claim of futility must fail. The fact that a demand on the stockholders may result in a lengthy and expensive proxy fight does not excuse a demand. *See Wolgin,* 722 F.2d at 322.

■ However, the plaintiffs have a valid claim as to the futility of making a demand on the stockholders. Under Maryland law, if presented with the opportunity, the stockholders could only bring a suit against the defendants by demanding that the directors bring an action against themselves. In *Parish,* demand on the stockholders was excused on similar grounds.

> The plaintiffs are also excused from making prior demand upon the members [equivalent to stockholders] before instituting the derivative suit. Here again such a demand would be futile as the majority of the directors of the Association are defendants charged, *prima facie,* with the wrongful conduct for which the Association will sue. As these directors control the Association, the Association under their management could not effectively or properly prosecute the litigation. 250 Md. at 84, 242 A.2d 512.

In *Parish,* the Maryland Court of Appeals cited with favor the earlier decision in *McQuillen v. National Cash Register Co.,* 22 F.Supp. 867, 874 (D.Md.1938), in which the court held that demands on both the directors and the stockholders would be excused under the predecessor of Rule 23.-1.

> If the individual defendants were permitted to conduct this suit, it would be prosecuted by them for the company against themselves. It thus clearly appears that an appeal to the directors would be futile, since it is apparent on the face of the pleadings that their interests are antagonistic to those of the plaintiffs. Surely, the usual preliminary steps incident to a stockholder instituting a suit of this kind are not to be treated as indispensable, when the interests of the directors are antagonistic to those of the corporation, and such fact is shown by the pleadings. The same common-sense rule must be applicable with respect to the requirement of first appealing to stockholders through regular or special meetings.

Although a practical solution to this problem (when all of the members of a corporation's board of directors are alleged wrongdoers named as defendants) would be for the shareholders to authorize the demanding plaintiff to prosecute a derivative suit on the corporation's behalf, such a remedy is not sanctioned by Maryland law. Given the fact that the shareholders would either have to order the directors to maintain the action against themselves, or to remove the present board and replace it with one that could maintain the suit against the former directors, it is readily apparent that there is no reason to require the plaintiffs here to have made a demand on the stockholders. *See Oldfield v. Alston,* 77 F.R.D. 735, 742 (N.D.Ga.1978) (applying Maryland law).

Having determined that demands on the directors and stockholders are excused under federal and Maryland law, and having found that a ripe, justiciable controversy exists, the Court will deny the defendants' motion to dismiss.

MOTION FOR SECURITY FOR COSTS

■ Rule 328(b)(1) of the Maryland Rules of Procedure (adopted by this Court pursuant to Rule 32 of the Rules of United States District Court for the District of Maryland) provides that:

> In any action instituted in the right of any corporation by the holder or holders of less than five per centum of the outstanding shares of any class of such corporation's stock or voting trust certificates, the corporation shall be entitled at any time before final judgment to require the plaintiff to give security for the reasonable expenses, excluding attorney's fees, which may be incurred by the other defendants for which it may in anywise become legally liable.

Although styled a "rule of procedure," the Fourth Circuit Court of Appeals has construed this rule as creating a substantive, rather than procedural right, which must be enforced in federal courts sitting in diversity. *Amdur v. Lizars,* 372 F.2d 103, 107–108 (4th Cir.1967).

Not surprisingly, the defendants ask that a large amount ($50,000) be required as security, and the plaintiffs argue that the law requires only a "nominal" amount. The plaintiffs also cite extremely low security amounts required in prior cases. However, they fail to include the dates of the cited cases (although other citations in their "opposing memorandum" include dates), and the dates range from 1949 to 1960. Needless to say, there has been a fair amount of inflation since then.

Having reviewed the affidavit and the memoranda submitted on this issue, the Court concludes that an amount of $40,000 should be posted as security by the plaintiffs if they wish to prosecute this action. An appropriate order will be entered.