**UNIFORMED SERVICES BENEFIT ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 88–0234–CV–W–6.

United States District Court, W.D. Missouri, W.D.

Jan. 3, 1990.

Charles W. German and Frank F. Sallee, Stinson, Mag & Fizzell, Kansas City, Mo., for plaintiff.

**534**

Jean Paul Bradshaw, II, U.S. Atty., Kansas City, Mo., Daniel V. Ross, Reviewer, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Plaintiff Uniformed Benefit Services Association (USBA) filed suit against the defendant United States of America (Government), seeking a refund of $712,155.61 in taxes and interest. The parties have submitted the case to the court on stipulated facts. The following statement of facts is drawn from that stipulation.

The plaintiff seeks a refund of taxes paid for the 1978 and 1979 tax years. During those years the USBA was a voluntary employee's benefit association, exempt from taxation under 26 U.S.C. § 501(c)(9). Such organizations are, however, subject to taxation for unrelated business income. *See* § 512. The association provides its members with insurance products consisting of life and accidental death and dismemberment benefits. USBA derives its revenues from premiums paid by members, from other fees and from investments. The income from sources other than insurance premiums is placed in a fund designated as the Operating Fund. Income placed in that fund is reported to the IRS as "set aside for payment of costs of administration of Association benefit programs." It is therefore exempt from taxation pursuant to § 512(a)(3)(B).

Income removed from the Operating Fund and spent for other than the designated purposes is subject to taxation as unrelated business income. *Id.* The dispute in the instant case arises from USBA's withdrawal of funds to purchase a new office building and a new computer system. Both the usable space in the building and the computer capacity exceeded USBA's needs for the taxable years. The Government subsequently assessed taxes against the plaintiff for the portions of the cost of the building and of the computer system that could be attributed to the excess capacity.

The parties stipulate that both purchases were reasonable and prudent business decisions. USBA had experienced considerable growth in the years prior to the purchases, and foresaw a similar level of growth in the coming years. At that time, it leased office space that no longer provided adequate space for its current or projected future needs. The association conducted a study of its requirements for office accommodations in light of its projected growth, and concluded that between 15,000 and 25,000 square feet would be necessary.

Subsequently, USBA embarked on a search for property that would satisfy those requirements. The plaintiff reviewed several options, including rental of space and the purchase of land for the construction of a new facility. USBA rejected those options either because the properties did not meet its needs for projected growth or because it considered the cost per square foot to be too high. The proposed construction project would have cost more, but provided fewer square feet, than the building that the plaintiff finally purchased.

USBA paid $1.3 million to Continental Casualty Company (CNA) for a building containing 52,900 square feet of rentable space. CNA required USBA to lease approximately 30,000 square feet of the building back to it for five years as a condition of the purchase. USBA rented other excess space in the building under short term leases. Before the purchase, USBA as lessee rented 6,000 square feet in the Midland building for its staff and rented storage space in other buildings. During the tax year in question (1978) USBA occupied 25% of the available space in the new building and appropriately rented out the remaining space. Since the purchase, the USBA has occupied steadily increasing proportions of the building, occupying approximately 85% of the available space in December 1988.

In 1978 USBA sought additional computer capacity. As was the case with the acquisition of the new building, an increasing need for computer time accompanied the association's growth. USBA fulfilled this need through a joint venture with the

unrelated Armed Forces Cooperative Insuring Association (AFCIA). Together the associations purchased a computer system and formed a corporation to control the system. Each association would have a right to 50% of the system's capacity. The corporation could sell any of the computer capacity that the associations did not use. During the taxable year ending May 31, 1979, USBA used 90–100% of the computer capacity available to it. USBA's needs subsequently exceeded the computer capacity. The system has been upgraded four times since 1979.

In audits of the 1978 and 1979 tax years, the IRS determined that the purchase of excess building capacity and excess computer capacity out of the set-aside funds contained in USBA's Operating Fund amounted to non-exempt use of those funds. The tax commissioner determined that USBA should be liable for taxes on amounts equalling 50% of the building purchase and 8% of the computer purchase. For the tax year 1978 USBA paid $298,-500.00 in back taxes and $401,375.23 in interest for a total of $699,875.23 for the assessment on the building purchase. It paid $5,451.94 in back taxes and $6,828.44 in interest for a total of $12,280.38 on the assessment for the computer purchase in tax year 1979. The plaintiff seeks a total refund of $712,155.61.

The parties agree that the purchase of the building was the best choice among the alternatives available to USBA. They agree that it was a wise business decision. USBA, relying on *Wolgin v. Simon*, 722 F.2d 389 (8th Cir.1984), and *Dahlem Foundation, Inc. v. United States*, 405 F.2d 993 (6th Cir.1969), suggests that the court should apply the business judgment rule, which admonishes against court interference in the sound judgment of business organizations, to its board's decision to purchase the building. The plaintiff argues that the Government's position is contrary to that rule and that the tax assessment amounts to a penalty against USBA for providing for its reasonably anticipated future growth by purchasing excess capacity at current prices. The plaintiff urges the court to consider the funds spent in anticipation of future growth as reasonable costs of administration, and therefore, qualified for the tax exemption.

The Government responds that the reasonableness of the plaintiff's business decision is not at issue. Because tax liability arises on an annual basis, *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948), a consideration of whether the plaintiff's purchases were necessary expenditures must be measured by the circumstances existing at the time of the transaction. The Government further points out the general rule that tax exemptions are to be narrowly construed. Therefore, the Government supports the commissioner's conclusion that the expenditure of funds for building space that exceeded the association's existing needs by approximately 300% was not a reasonable cost of administration.

The taxpayer who seeks a refund of taxes bears the burden of proving that it is entitled to a refund and of the amount of refund. *Mercantile Bank and Trust Co. v. United States*, 441 F.2d 364, 366 (8th Cir.1971). In this instance, because the taxpayer seeks to obtain a refund by establishing its right to a tax exemption, the taxpayer must overcome the well-established rule that exemptions are to be narrowly construed. *Id.* One function of the provisions for taxation of unrelated business income is to prevent tax-exempt organizations from gaining unfair competitive advantages in business activities unrelated to the organizations' exempt functions. *Midwest Research Institute v. United States*, 554 F.Supp. 1379, 1382 (W.D.Mo. 1983).

The Government has correctly asserted that the business judgment of the plaintiff is not at issue in this case. What is at issue is the nature of the transaction for which the plaintiff seeks to obtain a tax exemption. To avoid classification as unrelated business income, money withdrawn from USBA's Operations Fund must be spent on "reasonable costs of administration directly connected with ..." the organization's tax exempt purposes (in this case

the provision of insurance benefits). *See* 26 U.S.C. § 512(a)(3)(B)(ii).

■ The plaintiff fails to establish that the entire purchase of the building is directly connected with its exempt function. The building's available space vastly exceeded the plaintiff's current needs and was more than twice the desired size.

The plaintiff cites *Cotter and Co. v. United States,* 765 F.2d 1102 (Fed.Cir. 1985), to support its proposition that the acquisition and rental of excess space in anticipation of organizational growth constitutes sound business judgment for which a tax-exempt organization should not be penalized. In *Cotter* the taxpayer sought a refund of taxes charged after the Government determined that the rental of excess warehouse space generated income unrelated to a purchasing cooperative's exempt purposes.

The court rejected the Government's determination. The taxpayer's operations presented seasonal fluctuations in its demands for warehouse space. The cooperative was also experiencing substantial growth. The purchase of additional warehouse space and rental of excess space until needed was a reasonable response to the taxpayer's responsibility to provide for its storage needs at the lowest cost to its patrons. The court concluded that by so doing the taxpayer "did not go into the warehouse rental business, seeking to enhance its corporate profits while hiding behind its label as a cooperative." *Id.* at 1109. Instead, the court considered the rentals in relation to the taxpayer's attempt to fulfill its tax-exempt cooperative function of warehousing goods, and determined that the rental income was only incidental to that function. *Id.* at 1110.

By drawing an analogy from *Cotter,* the court may conclude that USBA's use of set-aside funds to purchase space for its reasonably anticipated growth should be considered a reasonable cost of administration. However, to the extent that the building purchased provided for more than twice the plaintiff's requirements, the court cannot conclude that the purchase of such excess space is merely incidental to the administration of an insurance cooperative. The *Cotter* court referred to the taxpayer's purchase of "excess capacity, soon to be absorbed by immediate and foreseeable growth." *Id.* at 1104. Some ten years after the purchase, USBA continued to lease out excess space in the building.[1]

Without doubt, the purchase of the building under the favorable circumstances described in the stipulation of facts constituted sound business judgment. Part of that business judgment, however, necessarily involved a recognition that the purchase of the building amounted to a good investment, an investment in property that provided rentable space far beyond the plaintiff's then anticipated needs. To the extent that the plaintiff withdrew cash from the Operating Fund to purchase investment property, that withdrawal should be considered unrelated business income.

The Government's method of calculating the proportion of the plaintiff's purchase that should be treated as investment does not, however, present a realistic assessment of the plaintiff's opportunity to purchase adequate space for its needs. The Government simply calculated half of the cost of the building to determine the reasonable cost of providing work space. Nowhere in the stipulated facts is there a suggestion that USBA could have purchased adequate space for $650,000. To the contrary, the stipulation shows $975,-000 to be the lowest price at which the plaintiff could have purchased space that came close to meeting its criteria. Only that portion of the purchase price that exceeds the price at which the plaintiff could have purchased adequate space should be considered an investment. According to the court's calculations, therefore, only $325,000 of the purchase should be considered an investment. Any taxes assessed on an amount greater than that figure should be refunded, together with interest.

---

**1.** The actual expansion of space needs, moreover, exceeded nonspeculative expectations, as of 1978. USBA then estimated membership growth at a rate of 5–10% per year, and this figure seems not to have been readily convertible to expansion of space needs.

 The plaintiff's purchase of computer facilities appears to be more directly in line with the problems the *Cotter* cooperative faced. The computer venture amounted to a purchase of "excess capacity, soon to be absorbed by immediate and foreseeable growth." *Cotter, supra* 765 F.2d at 1104.[2] In *Cotter* the taxpayer earned interest from surplus funds that it retained to satisfy its needs for liquidity in a seasonal market. It also earned income from temporary rental of excess warehouse space, again made available in large part because of seasonal fluctuations. Because it was necessary for the taxpayer to maintain liquidity and to have available storage space, the interest and rental income could be attributed to the cooperatives tax-exempt purposes.

In the instant case, the stipulation shows that USBA's use of its allotted share of computer capacity in the tax year approached 100% at times. It appears, therefore, that the purchase of computer capacity designed to accommodate the plaintiff's peak usage should be considered a reasonable cost of administration. The sale of excess capacity at times when the plaintiff's demands did not require it did not put the plaintiff in an unfair competitive position in the computer business. The plaintiff is entitled to a refund of the taxes assessed on its withdrawal of set-aside funds to purchase computer services.

Accordingly, it is hereby ORDERED that:

(1) the plaintiff is entitled to a refund (with interest) of taxes assessed for the tax year ending May 31, 1978, to the extent that taxes were assessed on more that $325,000 of the purchase price of the USBA building;

(2) unless the parties shall settle on the amount of the refund, the plaintiff shall file within thirty (30) days its calculations of the appropriate amount of the refund of the taxes paid in tax year 1978, and supporting suggestions;

(3) the defendant shall have fifteen (15) days to respond to the plaintiff's filing;

(4) the defendant shall refund taxes paid by the plaintiff for tax year 1979 in the amount of $12,280.38 plus interest as allowed by law.

---

**2.** In the absence of other appellate authority, the court considers it appropriate to follow the *Cotter* qualifications. Absent the restrictive test of *Cotter,* it would be arguable that acquisition of space for 15 years of expansion has only an incidental investment income objective.